Irwin M. MEISLER, Appellant,

v.

REPUBLIC OF TEXAS SAVINGS ASSOCIATION, Appellee.

No. C14–87–645–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 15, 1988.

Bertrand C. Moser, Morley W. White, Houston, for appellant.

James P. Keenan, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

Dr. Irwin M. Meisler appeals from a summary judgment. We affirm.

Appellant and Charles G. Shears entered into a tripartite loan agreement with Republic of Texas Savings Association ("Republic"), Bankers Capital Corp. ("Bankers") and Alison Mortgage Investment Trust ("Alison"). Alison provided interim financing for an apartment project and Republic was to provide permanent financing upon completion of the construction of the project. Bankers was to grant the permanent loan to Republic. Republic was to inspect the project on a monthly basis and Alison was to inspect it before closing and at other times as it deemed appropriate.

Appellant alleged that Alison inspected the project before closing and, finding no deviation from the plans and specifications, disbursed all interim financing. Republic did not inspect the project until after the construction was completed. Republic then alleged that there were deviations from the plans and specifications and refused to make the permanent loan upon the terms of the original loan commitment. Republic required a higher interest rate in order to make the loan. Appellant agreed to the higher interest rate and on July 10, 1974, Appellant, as president of Forest West Cor-

poration ("FWC"), executed a first mortgage real estate note, payable to Republic, in the original principal amount of $1,475,-000.00, with an interest rate of 9¼%. The deed of trust securing the debt provided that in the event FWC transferred the property without Republic's prior consent, Republic could, at its option, accelerate payment of the full amount of the note and require payment of a prepayment penalty. The deed of trust also provided that FWC could transfer the property with Republic's consent and that the purchaser could assume the note provided express conditions were met by the purchaser.

On September 17, 1975, and October 6, 1975, Mr. Pennington wrote to FWC on behalf of The Afton Company outlining a proposal to purchase the apartments. On November 10, 1975, the parties entered into an earnest money contract for the purchase of the apartments. FWC wrote to Republic on November 12, 1975, requesting approval of the sale and assumption of the note. Republic responded on December 1, 1975, approving the assumption subject to an increase in the interest rate from 9¼% to 9⅝%. On December 10, 1975, Republic again wrote to FWC and stated that the conveyance would be approved if: 1) the loan was prepaid without penalty before December 31, 1975; or, 2) the loan was assumed by the purchasers with an increase in the interest rate from 9¼% to 9⅝%; or, 3) the property was conveyed subject to the existing debt with the 9¼% interest rate and a transfer fee of 2% of the outstanding loan balance was paid to Republic.

At this juncture Mr. Al Rubin, agent for FWC, wrote to Republic on December 18, 1975, seeking an interpretation of the "Transfer of Property" and "Alienation Without Consent" clauses of the deed of trust. Mr. Conway Jordan of Republic responded the following day by stating: 1) the Transfer of Property clause had been modified to permit the sale of the property to an approved grantee without assumption of the first mortgage lien note; 2) he found no conflict between that provision and the Alienation Without Consent clause; and, 3) it was his opinion that the Alienation With-

out Consent clause would control over the Transfer of Property clause.

FWC did not comply with the conditions imposed for approval and the sale was not consummated. In January, 1976, FWC was unable to repay a loan from Appellant, Appellant foreclosed on the stock which had been pledged as security, and Appellant became the sole owner of the property. Republic later approved the sale of the property to Mr. Pennington.

On August 24, 1979, Appellant sued Republic for breach of the original loan commitment. The trial court granted Republic's Motion for Summary Judgment. This court reversed that summary judgment and remanded the case for further proceedings. *Meisler v. Bankers Capital Corporation*, 668 S.W.2d 828 (Tex.App.—Houston [14th Dist.] 1984, no writ). When the case was remanded to the trial court, Meisler filed a Motion for Partial Summary Judgment and Declaratory Relief on May 29, 1985, requesting construction of the provisions of the deed of trust and contending that the deed of trust was illegal and in violation of the public policy of this State.

Republic filed its Second Motion for Partial Summary Judgment on May 8, 1986, asserting that the statute of limitations barred Meisler's claim under the Declaratory Judgment Act. On July 28, 1986, the trial court granted Republic's Motion for Summary Judgment and held the statute of limitations barred the cause of action for declaratory judgment. On March 27, 1987, Meisler filed his Fourth Amended Petition naming Republic as the sole defendant and alleging, in addition to its breach of loan commitment claim, a claim that the Transfer of Property and Alienation Without Consent provisions of the deed of trust constituted an unreasonable restraint on the alienation of the property.

Meisler's Motion for Partial Summary Judgment and Declaratory Relief was overruled on April 14, 1987. The trial court found that the provisions of the deed of trust did not constitute an unreasonable restraint on alienation and that the suit for declaratory judgment was barred by the

statute of limitations. On the same date, the trial court entered an Amended Partial Summary Judgment in favor of Republic on its Second Motion for Summary Judgment. The court again found that the deed of trust provisions did not constitute an unreasonable restraint on alienation and that the statute of limitations barred Meisler's action for declaratory judgment.

The parties submitted Plaintiff's and Defendant's Proposed Findings of Fact on June 22, 1987, and these findings were adopted by the trial court. Among those findings was a finding that, "There was nothing improper, wrongful or unreasonable in the manner in which [Republic] enforced the provisions in the deed of trust with regard to imposing certain conditions on FWC prior to approving the sale of the apartment project to the Afton Company by FWC." Based upon these joint proposed findings of fact, the court on June 22, 1987, entered a final take-nothing judgment holding that Meisler was not entitled to any relief on any cause of action asserted in the suit. It is from this judgment that Meisler now appeals.

Appellant asserts three points of error. In his first two points of error Appellant contends the due on sale provisions in the deed of trust are unenforceable because they are not clear and unequivocal, and because they constitute an unreasonable restraint on alienation. In his third point of error, Appellant claims that the due on sale clauses are unenforceable and that his action is not barred by the statute of limitations.

The record shows that Appellant signed the deed of trust on July 10, 1974. In December, 1975, FWC requested approval of the proposed sale. On December 18, 1975, after Appellee communicated its conditions for granting that approval, FWC requested interpretation of the terms of the deed of trust relating to transfers of the property, and they received that interpretation on December 19, 1975. However, *FWC did not transfer the property and the due on sale clause of the deed of trust was never enforced by Appellee.* Appellant apparently contends that his cause of action accrued when Appellee communicated its conditions of approval of the transfer.

We find that even if Appellant's cause of action accrued in December, 1975, that cause of action is barred by the statute of limitations. Appellant filed his Original Petition on August 24, 1979. However, this petition alleged a cause of action for breach of a loan commitment. It did not allege any cause of action based upon the deed of trust. Appellant contends that his Fourth Amended Petition asserting a cause of action based on the deed of trust was filed on April 5, 1985; however, the record does not support that contention.

The record before us reflects that on May 29, 1985, Appellant filed his Motion for Partial Summary Judgment and Declaratory Relief, which for the first time requested the trial court to declare the deed of trust an unreasonable restraint on alienation. This was over nine years after the proposed sale of the property. Also, Appellant's Fourth Amended Petition, based on the Deed of Trust was filed March 21, 1987, more than eleven years after the latest date upon which the cause of action could have accrued.

In a case originally filed before the expiration of the limitations period, the test for determining whether the statute of limitations bars a cause of action alleged in an amended petition is whether the cause of action alleged in the amended petition is wholly based upon and grows out of a new, distinct or different transaction or occurrence. *Leonard v. Texaco, Inc.,* 422 S.W. 2d 160, 163 (Tex.1967). Section 16.068 of the Civil Practice and Remedies Code provides that:

> If a filed pleading relates to a cause of action, cross action, counter claim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct or different transaction or occurrence.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986). Whether there is a difference in the causes of action asserted in the original and amended petitions is not a determinative factor. *Leonard v. Texaco, Inc.*, 422 S.W.2d at 163; *Stone v. Brown*, 621 S.W.2d 182, 184 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.); *John H. Pelt Co., Inc. v. American Casualty Co. of Reading, PA.*, 513 S.W.2d 128, 130 (Tex. Civ.App.—Dallas 1974, writ ref'd n.r.e.). The cause of action alleged in Appellant's original petition is based on and grows out of an entirely distinct and different transaction than that alleged in his amended petition. The original cause of action was based upon a contract which committed Appellee to make a loan to FWC upon certain specified terms. The cause of action alleged in the fourth amended petition is based upon a deed of trust executed to secure payment of a loan made to FWC by Appellee.

We hold that Appellant's cause of action for breach of a loan commitment and his cause of action based upon the deed of trust arose out of and are based upon two separate and distinct transactions. Therefore, under § 16.068, the cause of action based upon the deed of trust does not relate back to the filing of the original petition and is therefore barred by the four year statute of limitations. TEX.CIV.PRAC. & REM.CODE § 16.004 (Vernon 1986). Point of error three is overruled.

Appellant's first two points of error challenge the enforceability of the "Transfer of Property" and "Alienation Without Consent" clauses of the deed of trust. We have reviewed the provisions of the deed of trust and we find that even if Appellant's cause of action was not barred by the statute of limitations, the Transfer of Property and the Alienation Without Consent clauses of the deed of trust are not ambiguous and do not constitute an unreasonable restraint on the alienation of the property.

We initially note that it appears from the pleadings and the briefs that Appellant foreclosed on his associates' interest in the property and then sold the property to The Afton Company with Appellee's approval; however, there is no evidence regarding this sale in the record before us. The "Transfer of Property" printed clause in the deed of trust provides:

"Grantors covenant and agree that they will not convey, assign, or otherwise transfer or hypothecate their interest, or any part of their interest in the above described property, or any portion of the above described property, without first obtaining prior written consent of the Association. Any conveyance, assignment or other hypothecation without the prior written consent of the Association shall give the Association the right and option to mature said note and to declare the entire indebtedness, both principal and accrued interest, due and owing, and to demand prompt payment thereof, and if same is not paid within ten (10) days, foreclosure proceedings may be instituted hereunder. It is understood and agreed that the Association is under no obligation to give its consent to any such transfer or conveyance by the Grantors, and may withhold its consent if: (1) Any conveyance by Grantor does not provide that the subsequent owner agrees to pay the above described promissory note in accordance with its terms and conditions; (2) Any subsequent owner fails to execute the Association's Subsequent Owner Statement, prior to any conveyance; (3) Any subsequent owner does not meet credit standards, as then set by the Association and is therefore unacceptable to the Association; (4) Any subsequent owner does not agree to the Association, in its discretion increasing the interest rate up to, but not in excess of, the maximum legal rates allowed under the Laws of Texas; or (5) the Association, by reason of said conveyance, assignment, or other hypothecation shall deem itself insecure. Any written consent given by the Association shall be conditioned upon, and shall not be binding on the Association until it is paid a transfer fee in the amount of $50.00 to transfer the loan on its books. The acceptance by the Association of any payment or payments subsequent to such sale, assignment, transfer, or hypothecation shall not be

deemed a waiver of the options herein set forth. Subject to prior written approval of Association Grantors may convey property by 'Subject to' conveyance."

The final sentence of the Transfer of Property Clause is a typewritten addition to the printed clause.

The "Alienation Without Consent" typewritten clause in the deed of trust provides:

"It is further agreed that in the event Grantor, or any other owner of the above described property should sell, transfer, part with possession, encumber or dispose of any property constituting the security of this loan, or there is any change in management or possession of said property without the written consent of the Association, (which consent shall not be unreasonably withheld) before this Deed of Trust is fully released and discharged, holder shall have the option to declare all of said note, including principal, interest and prepayment charges due and payable, and if said note is not paid within ten (10) days after same is declared due and payable, all of the other terms and provisions of this Deed of Trust shall apply. The failure to exercise this option shall not be construed as a waiver of the rights therein and said option may be exercised at any time. Following any such acceleration and prior to actual exercise of the power of sale herein granted, any tender of the amount to satisfy the entire indebtedness secured hereby shall be deemed a voluntary prepayment and such payment, to the extent permitted by law, shall include the premium or penalty required under the prepayment provision of the herein described note, or if at such time there is not a prepayment or penalty, then such payment, to the extent permitted by law, shall include a prepayment fee of five percent (5%) of the then unpaid principal balance."

The prepayment provision in the note reads as follows:

"This note shall be closed to prepayment, except for normal amortization, during the first eight (8) years from date hereof. In the ninth loan year, prepayment may be made in full or in part upon the payment to the holder hereof of an amount equal to six percent (6%) of the then outstanding principal balance. Beginning the tenth loan year, such penalty shall be reduced one-half of one percent (½ of 1%) each year thereafter, but not ever below a minimum prepayment penalty charge of two percent (2%). All prepayments of principal shall be applied in either the regular or inverse order of maturity, at the option of the holder of this Note."

Appellant maintains that these provisions are conflicting because the transfer of property paragraph allows Republic to condition its pre-transfer approval on an increase in the interest rate but does not mention a prepayment penalty, while the alienation without consent paragraph allows Republic to accelerate the note and assess a prepayment penalty of up to 5% of the outstanding indebtedness, yet says nothing about an increase in the interest rate. Appellant argues that these clauses are ambiguous because there are three possible constructions of the provisions: (1) the typed transfer of property clause controls; (2) the printed alienation without consent clause controls; or (3) the two clauses should be read together. We disagree with Appellant's contentions.

The harsh nature of acceleration requires that any contractual provision for acceleration of an indebtedness, in order to be effective, must be clear and unequivocal. *Sonny Arnold, Inc. v. Sentry Savings Ass'n*, 633 S.W.2d 811, 815 (Tex.1982). If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A contract is ambiguous when its meaning is uncertain and doubtful or reasonably susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d at 393.

In order to ascertain and give effect to the true intentions of the parties as expressed in the instrument, the court will examine and consider the entire writing in

an effort to harmonize and give effect to all provisions so that none will be rendered meaningless. *Seaman v. Seaman*, 686 S.W.2d 206, 211 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). When one or more of the instruments involved in a transaction are promissory notes, the rule of incorporation by reference applies so that the instruments will be read together whether or not they expressly refer to one another. *Estrada v. River Oaks Bank & Trust Co.*, 550 S.W.2d 719, 726 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). Further, typewritten contract provisions must be given effect over printed provisions where the provisions are conflicting. *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341, 344 (1957).

■ Applying these rules of construction to the contract provisions in question, we find that the provisions are reasonably susceptible to only one interpretation.

The Transfer of Property clause addresses the situation where the grantor seeks consent *before* a transfer or conveyance. It provides that Republic is not obligated to give its consent and may withhold that consent if, among other expressly stated conditions, the prospective purchaser does not agree to assume the indebtedness with an increased interest rate. This provision also clearly states that if Republic's consent is not obtained prior to the sale or conveyance, Republic has the right to accelerate the note and demand payment of the entire outstanding indebtedness within ten days, and if not paid within that period, to institute foreclosure proceedings.

The Alienation Without Consent clause, a typed addition to the deed of trust, addresses the failure of the grantor to obtain consent prior to the transfer or conveyance of the property. This paragraph further defines the actions which constitute alienation of the property, reiterates that Republic has the option to accelerate the note to maturity and declare all outstanding indebtedness due and payable upon alienation of the property without Republic's consent, and states that "all of the other terms and provisions of this Deed of Trust shall apply." The clause further provides that if the note is accelerated, any tender by the grantor of an amount to satisfy the indebtedness shall be considered a voluntary prepayment and therefore, in order to satisfy the entire indebtedness due, the tender must include the prepayment penalty provided for in the note. This provision further provides that if no prepayment penalty is provided for in the note, then the payment shall include a prepayment fee of 5% of the unpaid principal balance. The note provides for no prepayment for the first eight years and thereafter provides for a decreasing prepayment penalty with a 6% maximum and a 2% minimum fee.

■ The alienation without consent clause begins with the phrase, "It is further agreed." We find that this language, together with the fact that this provision appears in a typed addition to the printed deed of trust, clearly shows the parties intention that this provision should be a supplement to the printed provisions and should control over those other provisions in the event of a conflict. Under the terms of the Alienation Without Consent clause, if the grantor transfers the property without consent, Republic has the option of accelerating the note and requiring payment of a prepayment penalty. The amount of the prepayment penalty is governed by the terms of the note, but if no prepayment penalty is required under the note, Republic is entitled to assess a 5% prepayment fee under the alienation without consent clause. The Transfer of Property clause allows Republic to condition its consent to a transfer upon an increase in the interest rate. We hold that the provisions of the deed of trust are unambiguous, clear and unequivocal.

Further, contrary to Appellant's assertions, the addition of other alternative conditions of approval to the sale, found in Republic's letter communicating the conditions for its consent, do not indicate that any ambiguity exists in the terms of the deed of trust. We find that Republic merely provided alternative methods by which FWC could obtain its approval of the sale. As an alternative to the increased interest rate requirement which Republic was enti-

tled to impose under the deed of trust, FWC could prepay without penalty before December 31, 1975, or, could convey the property subject to the existing debt and pay a 2% transfer fee. Republic was acting within its agreed upon rights in conditioning its consent upon an increased interest rate, but chose to give FWC alternatives by which an increased interest rate could be avoided. Point of error one is overruled.

Appellant argues that the due on sale clauses (the Transfer of Property and Alienation Without Consent clauses) of the deed of trust constitute an unreasonable restraint on alienation of the property. However, Appellant and Appellee's joint findings of fact show that, "There was nothing improper, wrongful or unreasonable in the manner in which [Republic] enforced the provisions in the deed of trust with regard to imposing certain conditions on FWC prior to approving the sale of the apartment project to the Afton Company by FWC."

▪ A mortgage is governed by the rules which apply to interpretation of contracts. *Sonny Arnold, Inc. v. Sentry Savings Association,* 633 S.W.2d at 815. It is a basic contract principle that the parties have a right to contract with regard to their property as they deem appropriate, so long as the contract does not offend public policy and is not illegal. *Sonny Arnold, Inc. v. Sentry Savings Association,* 633 S.W.2d at 815; *Goodstein v. Huffman,* 222 S.W.2d 259, 260 (Tex.Civ.App.—Dallas 1949, writ ref'd). Deed of trust provisions allowing the lender to increase the interest rate as a condition of approving a sale of the property have previously been found *not* to constitute a restraint on alienation. *Sonny Arnold, Inc. v. Sentry Savings Association,* 633 S.W.2d at 815; *Crestview, Ltd. v. Foremost Ins. Co.,* 621 S.W.2d 816, 826 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.). Further, such clauses have been found to serve a valid business purpose and have been held valid and enforceable. *Sonny Arnold, Inc. v. Sentry Savings Association,* 633 S.W.2d at 816; *Crestview,*

*Ltd. v. Foremost Ins. Co.,* 621 S.W.2d at 827.

▪ Optional acceleration clauses in a deed of trust providing for a prepayment penalty where the grantor transfers the property without the lender's consent have been held to be restraints upon alienation. *North Point Patio Offices Venture v. United Benefit Life Ins. Co.,* 672 S.W.2d 35, 37 (Tex.App.—Houston [14th Dist] 1984, writ ref'd n.r.e.); *Metropolitan Savings & Loan Assn. v. Nabours,* 652 S.W.2d 820, 822 (Tex.App.—Tyler 1983, writ dism'd). Such a provision imposes contractual liability on the grantor as a result of his breach of the agreement not to convey the property and thus constitutes a promissory restraint on alienation. *Metropolitan Savings & Loan Assn. v. Nabours,* 652 S.W.2d at 822; *See* Restatement of Property § 404(1)(b) (1944); *Sonny Arnold, Inc. v. Sentry Savings Association,* 633 S.W.2d at 814.

▪ We find that unlike the situations presented in *Metropolitan* and *North Point,* the deed of trust before us contains specific provisions defining the lender's power to re-negotiate the terms of the loan. The grantor is required to obtain consent to the transfer; however, the lender may not unreasonably withhold its consent and the conditions for obtaining that consent are specifically set forth. Further, if the grantor fails to obtain consent prior to the transfer, the amount of the prepayment fee which may be imposed is limited to the applicable fee set forth in the note (a maximum of 6% of the outstanding balance) or, if none is required by the note, a prepayment penalty of 5% of the outstanding balance on the note. We hold that the language of the clause in the deed of trust providing for a prepayment penalty is not an unreasonable restraint on alienation because the terms of such a penalty are specifically provided for in the deed of trust, and the agreed upon rights of the lender are expressly qualified by the requirement of reasonable conduct on the part of the lender. Point of error two is overruled.

Accordingly, the judgment of the trial court is affirmed.